**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KARLA WOOTEN,**

　　　　**Petitioner,**

**-vs-**　　　　　　　　　　　　　　　　　　**Case No.  8:12-CV-1436-T-27EAJ**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

　　　　**Respondent.**
_____/

## ORDER

　　　　Petitioner, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging a conviction for acting as an unlicensed mortgage broker entered in case number 07-cf-3296 in 2007 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt. 1).[1]  Respondent filed an amended  response to the petition (Dkt. 55).  Petitioner filed a reply to the amended response (Dkt. 59).  Upon consideration, the petition will be denied.

## PROCEDURAL HISTORY

　　　　On August 1, 2007, an Information was filed charging Petitioner with two counts of unlicensed mortgage brokering in case number 07-CF-3296 (Resp. Ex. 14).  Petitioner was found guilty of one count of acting as an unlicensed mortgage broker (Resp. Ex. 17).  She was sentenced to 5 years in prison (Resp. Ex. 22).  On January 29, 2009, the state appellate court affirmed without a written opinion (Resp. Ex. 28).  The Florida Supreme Court dismissed Petitioner's petition for discretionary review (Resp. Ex. 29; Ex. 30).

---

[1]Petitioner was also convicted of grand theft in case numbers 04-18242 and 05-5084 (Resp. Exs. 4, 9, 20, 21). However, Petitioner does present any claims challenging either of those convictions in this Section 2254 petition.

On August 6, 2009, Petitioner filed a post-conviction motion pursuant to Rule 3.850, Florida Rules of Civil Procedure (Resp. Ex. 51).  The state post-conviction court dismissed the motion in part and denied it in part (Resp. Ex. 53).  On January 5, 2010, Petitioner filed an amended motion for post-conviction relief (Resp. Ex. 54).  The amended motion raised the following claims: 1) counsel was ineffective in failing to call Ronald McVeigh, Russell Fuller and Ann Thompson, 2) counsel was ineffective in failing to provide information about a plea offer, 3) counsel was ineffective in preparation for trial, 4) counsel was ineffective in failing to move for a mistrial when a witness tampered with the jury, 5) counsel was ineffective in failing to negotiate a plea deal, 6) counsel was ineffective in failing to know the mortgage broker licensing statute and mortgage law, 7) counsel was ineffective in failing to move for a mistrial or to disqualify the trial judge when the judge failed to allow certain testimony, and 8) counsel was ineffective in failing to introduce documents (Resp. Ex. 54).  The court ordered the State to respond to some claims and denied other claims (Resp. Ex. 55).  The State filed a response (Resp. Ex. 59), and Petitioner filed a reply (Resp. Ex. 61). On October 6, 2010, the state post-conviction  court denied some claims and ordered an evidentiary hearing on others (Resp. Ex. 60).  Following the January 11, 2012 evidentiary hearing (Resp. Ex. 77), the state post-conviction court denied Petitioner's Rule 3.850 motion (Resp. Ex. 78). Petitioner appealed, and on July 13, 2012, she filed her *pro se* Initial Brief (Resp. Ex. 92).  On May 9, 2014, the Second District Court of Appeal affirmed the denial of Petitioner's request for rule 3.850 relief (Resp. Ex. 95); *Wooten v. State*, 150 So.3d 1150 (Fla. 2d DCA 2014) [table].  On July 8, 2014, the Florida Supreme Court dismissed Petitioner's petition to invoke discretionary review (Resp. Exs. 98, 99).

Petitioner's federal habeas petition (Dkt. 1) raises the following four grounds for relief:

1-4. Trial counsel was ineffective in failing to

a. provide a meaningful defense, by proceeding to trial without having any information, depositions, or discovery;

b. call witnesses;

c. present documents in support of Petitioner's defense; and

d. know the law and file a motion for mistrial.

## STANDARDS OF REVIEW

### Standard of Review Under the AEDPA

The petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact. It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained the deferential review of a state court's findings:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court's factual findings must also be given deference. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Ineffective Assistance of Counsel Standard**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As the *Richter* Court explained:

4

The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

## DISCUSSION

### I. Procedural Bar

Respondent contends that Petitioner's claims are procedurally barred from federal habeas review because Petitioner did not exhaust the claims in state court. The Court disagrees.

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

Respondent argues that Petitioner failed to exhaust her claims because she failed to raise them on appeal of the state post-conviction court's denial of her Rule 3.850 motion. Respondent specifically contends that when Petitioner appealed the denial of Rule 3.850 relief, Petitioner "pressed the same two issues, previously raised by her appointed counsel, in her direct appeal after conviction in lower case 07-CF-3296" and did not "specifically challenge[] the decisions on her rule 3.850 claims of omission of trial counsel. . . ." (Dkt. 55 at p. 15).

A close review of Petitioner's Initial Brief, however, reveals that Petitioner did address her Rule 3.850 claims (Resp. Ex. 92).   Although not artfully articulated, Petitioner's Initial Brief asserted, among other things, that trial counsel was ineffective 1) in failing to call witnesses Ronald McVeigh, Russell Fuller, and Ann Thompson (id. at pp. 17-20), 2) in proceeding to trial unprepared (id. at pp. 22-23), 3) in failing to know the law pertaining to mortgage brokers and loan originators (id. at pp. 23-25), 4) in failing to move for a mistrial on the ground that the trial court prohibited Petitioner from eliciting testimony regarding the difference between a mortgage broker and a loan officer (id. at pp. 25-27), and 5) in failing to present evidence, specifically, a newspaper advertisement, an employment application, and a mortgage broker application signed by Jeff Rosen (id. at p. 27).[2]  The Court concludes, therefore, that Petitioner's claims were exhausted and are not procedurally barred.

## II. Merits

### Ground One

Petitioner complains that trial counsel rendered ineffective assistance because he was inadequately prepared for trial.  Petitioner asserts counsel was not prepared for trial because he went to trial only two days after he knew about her case, he did not have any information on the case, and he did not initiate discovery or take depositions.  Petitioner alleges that counsel believed that the State was not prepared for trial, and counsel wanted to "bluff" the State.

In state court, Petitioner raised this claim as Ground Three of her amended Rule 3.850 motion (Resp. Ex. 54 at pp. 9-10).  After an evidentiary hearing, the state post-conviction court denied the

---

[2]The pages of Petitioner's Initial Brief actually are not numbered (see Resp. Ex. 92).  References herein assume that the pages of the Initial Brief are numbered beginning with the cover sheet, i.e., the first page of Respondent's Exhibit 92.

claim as follows:

> In claim three, Defendant alleges ineffective assistance of counsel for failure to prepare for trial. Specifically, Defendant alleges counsel wanted to "bluff the State Attorney as he did not believe that the State Attorney was ready for trial," and so counsel told the Judge the defense was ready for trial. Defendant alleges counsel was not prepared and had not done any investigation, discovery, depositions, or review of the evidence at that time. An evidentiary hearing was granted on this claim.
>
> At the hearing, Defendant testified that Mr. McKeever told her they were going to bluff the State, because they did not believe they were ready for trial, but in reality she did not know what her speedy trial rights were, and the defense was unprepared to go to trial. (*See* January 11, 2011, transcript, pps. 150-152, attached). She admitted that she would not waive her rights to speedy trial. (*See* January 11, 2011, transcript, p. 155, attached).
>
> At the hearing, Mr. McKeever testified he would not have said he was ready for trial if he was not. (*See* January 11, 2012, transcript, p. 46, attached). He testified as to the extensive preparation he did for trial. (*See* January 11, 2012, transcript, pps. 47-49, attached). He testified Defendant did not want to waive speedy trial, but he was prepared for trial. (*See* January 11, 2012, transcript, pps. 51-52, attached).
>
> After reviewing the allegations, the testimony, and the record, the Court finds the testimony of Mr. McKeever to be more credible than that of Defendant. The Court finds Mr. McKeever was prepared to go to trial, and would not have said so if he was not. (*See* January 11, 2012, transcript, pps. 46-49, attached). The Court finds Defendant cannot demonstrate deficient conduct. **As such, no relief is warranted**.

(Resp. Ex. 78 at pp. 8-9) (footnote omitted) (emphasis in original).

The state post-conviction court flatly rejected Petitioner's claim, finding that counsel was prepared for trial. This finding is presumed to be correct under the AEDPA, and Petitioner has not rebutted that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

During the Rule 3.850 evidentiary hearing, Petitioner's trial counsel unequivocally testified that he was prepared for trial (Resp. Ex. 77 at pp. 51-52, 77-78). Moreover, he testified that in preparing for trial he:

> reviewed the information. I reviewed the allegations set forth in the reports. I

7

reviewed the witness names with Miss Wooten. I reviewed Miss Wooten's version of events with her. I reviewed whether or not she had any defense witnesses, and she indicated she did not. I reviewed what her theory of defense is, that she did not act as a mortgage broker. And I reviewed the maximum penalties with Ms. Wooten. And I reviewed what she believed each of the witnesses, especially Mr. Rosen, may testify to, and how she knew Mr. Rosen, who was their primary witness here. So I reviewed those things with her. And I did review speedy trial rights on Monday, actually August 7th. She didn't want to waive speedy trial because after my interview with her, we believed we were prepared to go to trial. I reviewed with her, her rights to testify or not to testify and explained what a narrative answer is what other answers are. And I would have reviewed the relevant statutes with her.

(Id. at p. 47).  He further testified that Petitioner knew all the State's witnesses, and she wrote down a number of questions she wanted counsel to ask the witnesses (Id. at pp. 77-78).

Additionally, a review of the trial transcript shows that defense counsel was adequately prepared for trial and effectively presented Petitioner's defense that she was not acting as an unlicensed mortgage broker, but rather was acting as a loan officer and was not required to have a license (Resp. Ex. 16). Counsel did this by extensively cross-examining the State's witnesses, especially Rosen, and presenting Petitioner's testimony that she had responded to an advertisement soliciting loan officers, not mortgage brokers, that she never held herself out as a mortgage broker, and that she was working as a loan officer for Rosen under his license (Id.).  Counsel also attempted to present testimony from Jason Booth explaining the difference between a mortgage broker and a loan officer (Id. at p. 248). The trial court, however, did not allow this testimony (Id. at pp. 248-56). Petitioner asserts that counsel should have presented evidence and argument that she was employed as a "loan originator" and that loan originators are not required to be licensed.  Petitioner, however, testified that she was a "loan officer" not a "loan originator."  (Id. at pp. 261, 263, 274).[3]

---

[3]As Petitioner's trial counsel testified to during the Rule 3.850 evidentiary hearing, it appears that Petitioner first used the term "loan originator" during the state post-conviction proceedings (Resp. Ex. 77 at p. 72). At the time of Petitioner's trial, Florida Statute, Section 494.001 (2006) stated, in pertinent part, that "act as a loan originator. . .means

8

In this circumstance, the test is not whether trial counsel did everything he could have done. Rather, the test is whether the assistance that was rendered was "within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (quoting *Strickland*, 466 U.S. at 689). Petitioner's trial counsel's assistance was within this range.

In light of the record and the doubly-deferential standard of ineffective assistance of counsel claims reviewed under § 2254, Petitioner has failed to show that the state courts' denial of this claim was objectively unreasonable. Accordingly, Ground One does now warrant federal habeas relief.

**Ground Two**

Petitioner claims that trial counsel was ineffective in failing to call "witnesses whose testimony would have been exculpatory." (Dkt. 1 at docket p. 5). In her amended Rule 3.850 motion, Petitioner asserted that counsel should have called Ronald McVeigh, Russell Fuller, and Ann Thompson (Resp. Ex. 54 at pp. 2-7). Petitioner contended that McVeigh would have testified that he hired Petitioner as a loan originator, not a mortgage broker, and that Petitioner did not need to be licensed for the position (Id.). Petitioner asserted that Fuller would have testified he interviewed Petitioner for a loan originator position, the position is "ministerial and clerical," and Petitioner was one of twelve loan originators hired following an advertisement in the newspaper (Id). Finally, Petitioner opined that Ann Thompson could have testified as an expert witness, and would

---

*being employed by a mortgage lender* or correspondent lender for compensation or gain or in the expectation of compensation or gain, to negotiate or offer to negotiate or assist any licensed or exempt entity in the making of a mortgage loan. . . ." (emphasis added). Petitioner did not testify that she was employed by a mortgage lender. Rather, she testified that she was employed by Rosen, a mortgage broker. Additionally, "employed" under Chapter 494 was defined as "engaged in the service of another for salary or wages, subject to withholding, FICA, or other lawful deductions by the employer as a condition of employment." Section 494.001(11) (2006). Rosen testified that Petitioner was an independent contractor, not an employee. And, Petitioner did not present any evidence showing that she received a salary or wages subject to withholding or deductions. Therefore, because Petitioner was not "employed by a mortgage lender," she did not meet the definition of a loan originator under Florida law.

have testified to the difference between loan originators and mortgage brokers, and Florida's mortgage broker licensing requirements (Id.).

In state court, Petitioner raised this claim in Ground One of her amended Rule 3.850 motion (Id.). After an evidentiary hearing, the state post-conviction court denied the claim as follows:

> In claim one, Defendant alleges ineffective assistance of counsel for failure to call Ronald McVeigh, Russell Fuller, and Ann Thompson as witnesses at trial in case 07-CF-003296. When an ineffective assistance of counsel claim is based on counsel's failure to call a witness, Defendant must allege 1) the identity of the witness, 2) the substance of the witness's testimony, 3) that the witness was available to testify, and 4) the prejudice that resulted without the witness's testimony. *See Petz v. State*, 917 So. 2d 381, 382-83 (Fla. 2d DCA 2005). Defendant alleges Mr. Ronald McVeigh would have testified that he hired Defendant as a loan originator, not a mortgage broker, and Defendant did not need to be licensed for the position. Defendant states he would have further testified regarding Defendant's job description and compensation. Defendant states Mr. Russell Fuller would have testified he interviewed Defendant for the position of loan originator and loan processor, that her position was "ministerial and clerical," and that Defendant was one of twelve loan originators hired following an advertisement in the Tampa Tribune. Defendant contends counsel should have called Ann Thompson as an expert witness, and she would have testified to the difference between loan originators and mortgage brokers, and Florida mortgage broker licensing requirements. Defendant alleges that these three witness were available to testify, and she would have been found not guilty had each been called.
>
> In its response, the State separately addresses the factual testimony and legal testimony Defendant alleges these witnesses would have provided. In claim one (a), the State argues that Defendant did not allege the specific facts that Mr. McVeigh and Mr. Fuller would have testified to regarding her employment. (*See* State's response, attached). The State asserts Defendant has failed to establish prejudice because she did not specifically allege that these witnesses would testify to her wages or salary and the amount of control America's best mortgage [sic] exercised over Defendant's actions. The Court found the current record did not refute Defendant's allegation and granted an evidentiary hearing on this claim.
>
> At the hearing, Defendant admitted she never personally interviewed any of the witnesses nor did she acquire any affidavits as to what they would testify to. (*See* January 12, 2012, transcript, p. 224, attached).
>
> At the evidentiary hearing, none of the above witnesses testified. Therefore,

10

Defendant failed to present any admissible evidence that would have affected the outcome of her trial. **As such, no relief is warranted**.

In claim one (b), the State argues Defendant's allegations, that Mr. McVeigh, Mr. Fuller, and Ms. Thompson would have testified as expert witnesses regarding the license requirements for mortgage brokers, would have been inadmissible at trial, and therefore, counsel cannot be ineffective for failing to call these witnesses for that purpose. (*See* State's response, attached).   An expert witness's testimony is admissible if it contains "scientific, technical, or specialized knowledge [to] assist the trier of fact in understanding the evidence." *See* Fla. Stat. § 90.702 (2006). An expert's testimony, if based on knowledge, skill, experience, training, or education, may contain the expert's opinion if it can be applied to the evidence at trial — even if that opinion includes an ultimate issue to be decided by the trier of fact. *See* Fla. Stat. §§ 90.702 - 90.703 (2006). Though the State argues these witnesses' testimony would have been inadmissible at trial because it contains only "comments or instruction on the law," Defendant's allegation is that these witnesses had expert knowledge through training, education, and experience that could have shown the work she was completing was not that of a mortgage broker, exempting her from licensing requirements. The Court found the current record record [sic] did not refute defendant's allegation that these witnesses would have qualified as experts or that each could apply his or her opinion to the trial evidence. The Court granted an evidentiary hearing on this claim.

At the evidentiary hearing, none of the above witnesses testified. Mr. McKeever also testified that Defendant indicated she did not have any defense witnesses. (*See* January 11, 2012, transcript, p. 34, attached). Therefore, Defendant failed to present any admissible evidence that would have affected the outcome of her trial. **As such, no relief is warranted**.

(Resp. Ex. 78 at pp. 5-7) (footnote omitted) (emphasis in original).

McVeigh, Fuller, and Thompson did not testify during the state Rule 3.850 evidentiary hearing (Resp. Ex. 77).  During the evidentiary hearing, Petitioner admitted that she never spoke to McVeigh, Fuller, or Thompson, or obtained affidavits from them (Id. at p. 224).  And Petitioner has not presented any evidence to this Court supporting her contention that McVeigh, Fuller, and Thompson were available and willing to testify at trial, and that they would have testified as she theorizes.

11

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Consequently, Petitioner's claim is too speculative to warrant relief.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).  *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Moreover, during the Rule 3.850 evidentiary hearing, Petitioner's trial counsel testified that Petitioner never provided him with McVeigh and Thompson's names (Resp. Ex. 77 at pp. 23, 33, 34).  And although Petitioner mentioned Fuller's name while discussing the case with counsel (id. at pp. 24, 27), Petitioner told counsel that she did not have any witnesses (Id. at p. 34).

Petitioner has failed to demonstrate that counsel acted deficiently and that she sustained prejudice.  Therefore, the state post-conviction court's denial of this claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that trial counsel was ineffective in failing to present certain exculpatory evidence.  In her state amended Rule 3.850 motion, Petitioner specifically stated that counsel was

12

ineffective in failing to obtain and present 1) a Tampa Tribune employment advertisement soliciting loan originators, 2) the employment application she completed in response to the advertisement, which would have indicated that she applied for a position as a loan originator, and 3) a mortgage broker application that was signed by Jeff Rosen and indicated that Rosen, not Petitioner, was the mortgage broker for the Tavares Levarity loan (Resp. Ex. 54 at pp. 19-20). Petitioner argued that had counsel obtained and presented these documents at trial, she would have been found not guilty of the acting as an unlicenced mortgage broker charge because the documents proved that she was not acting as a mortgage broker, but rather was a loan originator (Id.).

In state court, Petitioner raised this claim as Ground Eight of her amended Rule 3.850 motion (Id.). After an evidentiary hearing, the state post-conviction court denied the claim as follows:

> In claim eight, Defendant alleges ineffective assistance of counsel for failing to obtain a copy of the Tampa Tribune employment advertisement, which led to her employment as a loan originator, not a mortgage broker. Defendant contends counsel refused to obtain a copy of a mortgage application signed by Mr. Jeff Rosen, a licensed mortgage broker, to show Defendant worked as a loan processor under Mr. Rosen and not as the mortgage broker. Additionally, Defendant states counsel would not obtain a copy of her employment application, which would demonstrate Defendant was hired as a loan originator. Defendant alleges these three pieces of evidence would have resulted in a not guilty verdict if counsel had properly investigated, obtained, and introduced it. An evidentiary hearing was granted on this claim.

> At the evidentiary hearing, Defendant testified that she wanted the ad to show that the position was for a loan officer with Starfish capital [sic], and the broker application to show she was not the broker. (*See* January 11, 2011, transcript, p. 168, attached). She testified that she initially responded to the ad for Starfish capital [sic], and then went and spoke with Mr. Jeff Rosen about working for him, but claims it was all part of the same mortgage company. (*See* January 12, 2011, transcript, pps. 224-226 attached). She admitted that Mr. Rosen stated Defendant did not work for him, but that she was an independent contractor. (*See* January 12, 2011, transcript, p. 226, attached). She also testified that the only deductions she had taken out were the fees Mr. Rosen deducted from her commission. (*See* January 12, 2011, transcript, p. 228, attached).

13

At the evidentiary hearing, Mr. McKeever testified that he did not retrieve the ad because he has no notations that Defendant ever mentioned it to him. (*See* January 11, 2012, transcript, p. 73, attached). His notes also do not reflect her asking him to get a copy of the mortgage application that was signed by Jeff Rosen. (*See* January 11, 2012, transcript, p. 73, attached). He testified that his notes indicate she responded to an advertisement, but that there was no agreement in writing regarding her job. (*See* January 11, 2012, transcript, pps. 74, 75 attached).  He also testified that Mr. Rosen was not Starfish capital [sic]. (*See* January 11, 2012, transcript, p. 86, attached). He testified his notes reflect that at his meeting on August 10, Defendant indicated she did not desire any more discovery. (*See* January 11, 2012, transcript, p. 86, attached). After reviewing the allegations, the testimony, the court file and the record, the Court finds the testimony of Mr. McKeever to be more credible than that of Defendant. The Court finds there was no written employment agreement for Defendant at Starfish Capital or with Jeff Rosen for Mr. McKeever to locate, and simply presenting an advertisement would not have affected the outcome of the trial. (*See* January 11, 2011, transcript, p. 73, attached). The Court finds Defendant cannot demonstrate prejudice. **As such, no relief is warranted**.

(Resp. Ex. 78 at pp. 14-15) (emphasis in original).

The state post-conviction court's determination that Petitioner failed to demonstrate prejudice was not objectively unreasonable, and was not based on an unreasonable determination of the facts. First, Petitioner did not provide, either to this Court or the state post-conviction court, the documents (newspaper advertisement, employment application, and mortgage broker application signed by Jeff Rosen) that she contends would have established that she was acting as a loan originator rather than a mortgage broker.  Petitioner's conclusory allegations regarding what the documents would show, without any evidence to support those allegations, do not warrant federal habeas relief.  By neglecting to present any evidence in support of her claim, Petitioner's claim is conclusory and insufficient to prove ineffective assistance of counsel under *Strickland*.  *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'") (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).

Second, during the Rule 3.850 evidentiary hearing, Petitioner's trial counsel testified that his notes did not indicate that Petitioner asked him to obtain the newspaper advertisement and the mortgage application signed by Jeff Rosen (Resp. Ex. 77 at pp. 72-73). And although trial counsel testified that he did not obtain a copy of Petitioner's employment application (id. at p. 75), he was never asked if Petitioner had asked him to obtain a copy of the employment application. Petitioner testified that she asked trial counsel to obtain a copy of the newspaper advertisement, employment application, and mortgage broker application signed by Rosen (Id. at pp. 168-70).

In denying this claim, the state post-conviction court stated, in pertinent part, that "the Court finds the testimony of Mr. McKeever to be more credible than that of Defendant." (Resp. Ex. 78 at p. 15). In federal habeas proceedings, deference is given to a trial court's credibility determinations, and such findings may be disturbed only if they are unreasonable in light of the evidence. *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007). The testimony that the state post-conviction court found to be credible reflected that trial counsel's notes did not indicate that Petitioner had asked him to obtain the documents, but did indicate that Petitioner told him she wanted to proceed to trial and did not want discovery. Accordingly, trial counsel did not render deficient performance in failing to obtain and present documents of which he was not aware prior to trial.

Additionally, Petitioner has failed to demonstrate prejudice because she has not shown a reasonable probability of a different outcome at trial had her counsel obtained the documents and presented them. During trial, Tavares Levarity, the individual whom Petitioner helped refinance his home, testified that Petitioner had told him that she was a licensed mortgage broker (Resp. Ex. 16 at pp. 133, 148). India Miracle, who worked at America's Best Mortgage ("ABM"), testified that

15

Petitioner was a mortgage broker who worked with ABM as an independent contractor (Id. at pp. 158-59).  Rosen, the owner of ABM, testified that he interviewed Petitioner to work for him as a mortgage broker, and not as an employee but rather an independent contractor (Id. at 190-91). During the interview, Rosen asked Petitioner for a copy of her mortgage broker license, and she told him that she was licensed and would get him a copy of the license (Id. at pp. 191-92).  Rosen hired Petitioner as a mortgage broker on an independent contractor basis (Id. at p. 192).

Petitioner testified that she went to Starfish Capital ("Starfish") in response to a newspaper advertisement seeking applicants for a loan officer position (Id. at pp. 260-61).  Starfish was a branch office for ABM (Id. at p. 262).  Rosen testified that he was not responsible for the Starfish newspaper advertisement soliciting loan officers (Id. at p. 290).  Rosen further testified that Starfish "was Ron McVeigh," that McVeigh "had a branch license under my company to have his own office," and that McVeigh "had the ability to hire and fire people." (Id. at pp. 202-03).  Petitioner testified that she accepted a position with Starfish as a loan officer (Id. at p. 263).  She was not with Starfish very long, and within 15 to 20 days after she started working with Starfish, she met with Rosen (Id. at p. 264).  Petitioner accepted "a position" with ABM (id. at p. 266), and was "working under the license of Mr. Rosen" as "a loan officer" (Id. at pp. 267, 274).  Rosen testified that Petitioner was not working under his license, and that "[b]rokers work under their license and work with me." (Id. at p. 288).  Petitioner admitted that she solicited a loan on behalf of Mr. Levarity, and that she received compensation from Mr. Rosen for doing so (Id. at p. 286).

In light of this testimony, the newspaper advertisement and employment application would not have established that Petitioner was not acting as a mortgage broker.  Even if the advertisement solicited "loan officers," and the application was for a loan officer position, those documents

16

pertained to Starfish and would not have established that Rosen subsequently hired Petitioner as a loan officer, and that Petitioner was not acting as a mortgage broker on the Levarity loan. Rosen unequivocally testified that he had nothing to do with the advertisement, that McVeigh could hire and fire people, that Petitioner told him she had a mortgage broker license, and that he hired Petitioner as a mortgage broker on an independent contractor basis.

Likewise, the mortgage broker application would not have established that Petitioner was not acting as a mortgage broker on the loan. Rosen testified that he may have sent his broker license to the lender to close the Levarity deal because "[y]ou can't close any deals without sending a license to a lender." (Resp. Ex. 16 at p. 289). Even if Rosen's broker's license was on the application, that would not establish that Petitioner was not acting as a mortgage broker on the Levarity loan. The jury was instructed, in pertinent part, that:

> "Act as a mortgage broker" means for compensation or gain or in the expectation of compensation or gain, either directly or indirectly, accepting or offering to accept an application for a mortgage loan, soliciting or offering to solicit a mortgage loan on behalf of a borrower, or negotiating or offering to negotiate the terms or conditions of a mortgage loan on behalf of a lender.
>
> An employee whose activities are ministerial and clerical, which may include quoting available interest rates or loan terms and conditions, is not acting as a mortgage broker.

(Resp. Ex. 16 at pp. 324-25). Petitioner admitted that 1) she performed all the work on the Levarity loan, including accepting Levarity's application for a mortgage loan and soliciting a loan on Levarity's behalf (Resp. Ex. 16 at p. 286), 2) she received "the broker fee and the processing fee" from Rosen for the Levarity loan (id. at p. 281), and 3) she did not have a mortgage broker license (Id. at pp. 286-87).

17

Petitioner has failed to meet her burden of proving that the state post-conviction court's decision was contrary to *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d)(1), (2). Accordingly, Ground Three warrants no federal habeas corpus relief.

**Ground Four**

In Ground Four, Petitioner first contends that trial counsel was ineffective in failing to know the law as it applied to her case.  In Ground Six of her amended Rule 3.850 motion, Petitioner asserted that counsel did not know the law governing loan originators, and did not know that loan originators were not required to have a mortgage broker license under Florida Statutes, Chapter 494 (2006) (Resp. Ex. 54 at pp. 13-14).  In denying this claim, the state post-conviction court stated:

> In claim six, Defendant alleges counsel provided ineffective assistance by not knowing mortgage law and not knowing the Florida Statutes citation for mortgage broker licensing.  Defendant states that the trial judge instructed counsel at trial that she would only admit the statute into evidence if counsel could provide the citation, and when he could not, the Court would not admit the statute. Defendant further states that sections 494.001 and 494.077 of the Florida Statutes allow loan originators to work without a license, and the jury should have known about this critical element. Defendant alleges she would not have been found guilty if counsel had known the proper statute citation at trial. In its response, the State argues Defendant's claim is essentially an allegation that counsel did not request a proper jury instruction, though the State admits Defendant does not mention the term jury instructions. (*See* State's response, attached).  The State points out, and the Court agrees, that Defendant must be referring to the license exemption under Fla. Stat. § 494.006 (2)(a) (2006). The State argues that this exemption only applies to employees of a mortgage lender, and that Defendant had the burden at trial to prove this exemption applies. The State concludes that because defendant did not present any evidence that this licensing exemption applied to her, she cannot demonstrate that counsel was ineffective for failing to request the jury instruction. However, the Court finds Defendant's claim is not limited to jury instructions, but more generally that counsel failed to present evidence of this exemption to the jury when the judge provided the opportunity. And Defendant alleges that but for counsel's failure to meet the burden, the jury would have found her not guilty. An evidentiary hearing was granted on this claim.

18

At the hearing, Defendant testified that Mr. McKeever never provided any evidence of the definition of a mortgage broker, a loan originator or a loan officer. (*See* January 11, 2011, transcript, p. 163, attached). She admitted that Mr. McKeever informed the judge that after extensive research, he could not find a definition. (*See* January 11, 2011, transcript, p. 165, attached). She testified that she reffered [sic] to herself as a loan officer throughout trial, but most companies use that term interchangeably with loan originator. (See January 12, 2011, transcript, pps. 231-232, attached). Defendant entered documents purporting to show she qualified for the exemption, but failed to provide an employment agreement, W-2, 1099 or any other proof of employment. (*See* Defense exhibit 1, 2 and 3, attached).

At the hearing, Mr. McKeever testified that he was instructed to find case law regarding the definition of a mortgage [sic] officer, however he could not find any case law on the subject. (*See* January 11, 2012, transcript, p. 31, attached). He testified that everything in the record indicated Defendant was an independent contractor, which put her outside of the exemptions in Florida Statute 494, but that he did research those exemptions. (*See* January 11, 2012, transcript, pps. 64 65, 83, attached). He testified that he did not believe section 494 was relevant based upon the other evidence at trial, as nothing indicated she worked under Mr. Rosen. (*See* January 11, 2012, transcript, pps. 67, 84, attached). In Defendant's supplement, page 182 of the trial transcript, the transcript reflects that Mr. Rosen testified that he only had independent contractors at Starfish.  (*See* Defendant's supplements, attached).

The State pointed to the definition of the term loan originator in section 494.001 to .077, which says it is a natural person employed by a mortgage lender, however the State argues that Defendant was not employed by a lender, but was an independent contractor. (*See* January 12, 2011, transcript, p. 232, attached).

After reviewing the allegations, the testimony, the court file and the record, the Court finds the testimony of Mr. McKeever to be more credible than that of Defendant. The Court finds Mr. McKeever made arguments based upon the evidence that was at trial, and that an exemption did not apply. (*See* January 11, 2012, transcript, pps. 64-65, attached). The Court finds Defendant cannot demonstrate deficient conduct. **As such, no relief is warranted**.

(Resp. Ex. 78 at pp. 11-13) (emphasis in original).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient performance was not objectively unreasonable, and was not based on an unreasonable determination of the facts.  While Petitioner's claim of ineffective assistance of trial counsel is a federal question,

her challenge to the application of Florida law is a state law matter. In rejecting this claim, the state post-conviction court determined that Petitioner did not meet any exemption from the license requirement enumerated in Chapter 494.[4] This Court must defer to the state post-conviction court's interpretation of state law. *See Will v. Sec'y for Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)) (emphasis and alteration in original). Therefore, Petitioner has failed to demonstrate that counsel was deficient in failing to argue at trial that Petitioner was exempt from the license requirement because she was a loan originator.

Petitioner next contends in Ground Four of the petition that counsel was ineffective in failing to move for a mistrial. In Ground Seven of her amended Rule 3.850 motion, Petitioner complained that counsel was ineffective in failing to move for a mistrial or to disqualify the trial judge on the ground that the judge refused defense counsel's request to have Jason Booth, an employee of the State of Florida Department of Financial Services, testify to the difference between a loan originator and a mortgage broker, and about whether or not loan originators are required to be licensed under Florida Statutes, Chapter 494 (Resp. Ex. 54 at pp. 16-18). Petitioner asserted that the trial judge's

---

[4]Additionally, as noted in Ground One above, Petitioner did not present any evidence that she was an employee of a mortgage lender, and therefore failed to show that she met the definition of a "loan originator." Moreover, as noted above, Petitioner never testified that she was a "loan originator." To the extent Petitioner claims that she was a "loan officer," nothing in the record indicates that Petitioner ever provided the state courts or this Court with a statutory definition for "loan officer." Counsel for Respondent asserts that "the term 'loan officer,' is not contained in the older version of the statute, nor could undersigned find such a term in the most recent amendments to Chapter 494." (Dkt. 55 at p. 42).

refusal to allow this testimony amounted to "judicial misconduct and bias."  (Id. at p. 18).

In denying this claim, the state post-conviction court stated:

> In claim seven, Defendant alleges counsel was ineffective for failing to move for mistrial or file a motion to disqualify the Judge when the Judge did not allow certain testimony in front of the jury. Specifically, Defendant alleges, "Judge Barbara Fleischer refused to allow defense counsel to question State witness Jason Booth, an employee of the State of Florida Department of Financial Services, and a State of Florida Expert Witness in the presence of the jury about the difference between a loan originator and a mortgage broker, and about whether or not loan originators are required to be licenced per F.S. 494, the charge under which Defendant was indicted. The testimony of Jason Booth and his being allowed to answer those questions was critical to the defense." Defendant further alleges this provided a sufficient basis for a mistrial if counsel had filed the motions.  The State properly argues that the trial court's adverse evidentiary ruling is not a legally sufficient basis to disqualify a judge. *See Thompson v. State*, 759 So. 2d 650, 659 (Fla. 2000); (*See* State's response, attached). As such, that portion of claim seven must be denied. Defendant also alleges counsel should have moved for a mistrial because the Court excluded this evidence.  An evidentiary hearing was granted on the claim that counsel should have moved for a mistrial.

> At the hearing, Defendant testified that all of the attorneys said they did not know the law on the definitions and that the witness should not be allowed to testify to it (*See* January 11, 2012, transcript, p. 166, attached).

> At the evidentiary hearing, Mr. McKeever testified he did not believe there was a basis for a mistrial, and he thought it was properly reserved for direct appeal. (*See* January 11, 2012, transcript, p. 72, attached).

> After reviewing the allegations, the testimony, the court file and the record, the Court finds the testimony of Mr. McKeever to be more credible than that of Defendant. The Court finds that there was no basis to move for a mistrial. (*See* January 11, 2012, transcript, p. 72, attached). The Court finds Defendant cannot demonstrate deficient conduct. **As such no relief is warranted**.

(Resp. Ex. 78 at pp. 13-14) (emphasis in original).

As noted above, this Court must defer to the state post-conviction court's interpretation of state law.  *Will*, 278 Fed. App'x at 908.  In rejecting this claim, the state post-conviction court determined that there was no basis under Florida law to disqualify the judge or for a mistrial.

Therefore, the state post-conviction court has answered what would have happened if trial counsel had moved to disqualify the judge or for a mistrial on the ground that the judge denied defense counsel's request to have Booth testify regarding the law pertaining to loan originators—the motions would have been denied.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005). Because a motion to disqualify and a motion for mistrial would have been denied, Petitioner cannot show that counsel was deficient in failing to file the motions and that she was prejudiced by counsel's failure to file the motions.  *See, e.g., United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless suppression motion.") (citation omitted); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue).

Petitioner has failed to demonstrate that the state courts' rejection of this ineffective assistance of trial counsel claim was contrary to or an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.  Accordingly, Ground Four does not warrant federal habeas relief.

ACCORDINGLY, it is **ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.  The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of her habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. Id. Petitioner is only entitled to a COA if she demonstrates that reasonable jurists would find debatable whether the Court's procedural rulings were correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because she cannot demonstrate that reasonable jurists would debate whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, she is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on _September 30_, 2015.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

SA:sfc
Copy to: Petitioner *pro se*
        Counsel of Record